## SUCCESSION OF ANTOINE HEBRARD.

The purchaser of property, at a judicial sale of property belonging to a succession, is not bound to look further back than the order of the Court ordering the sale. If the order is made by a Court of competent jurisdiction, the purchaser is not responsible for the proceedings which preceded the order of sale.

He is not bound to inquire whether the Court was mistaken in the facts, upon which the order of sale is based.

APPEAL from the Second District Court of New Orleans, *Thomas*, J. C. *Dufour*, for executor.

*A. Pilot, for appellant.*—Antoine Hebrard died in the city of New Orleans, in the year 1860. Among the property inventoried is a lot of ground with the buildings thereon, situated in Common street, valued at the sum of $11,000. The succession was opened, and on the 25th day of January, 1862, a petition was presented by the executor for the sale of said property, in order to pay the then existing debts, on the following terms and conditions, agreed upon by all parties interested, viz : "For the slaves, cash; for the real property, one-third cash, balance for notes at six and twelve months, secured by mortgage, with six per cent. interest from date."

At the foot of the petition, all the heirs, together with the attorney for the absent heirs, and the executor, have affixed their signature, approving said terms and conditions.

In April, 1862, the property was adjudicated for $ —— , but the currency then offered in payment of the cash due having been refused, the adjudication was annulled by common consent.

Three years elapsed, during which time no sale took place on account of the unsettled state of the country, the houses were rented, and pay-

ments and advances were made by the first executor before settling the estate.

After an absence from the country, the second executor named in the will came back, qualified, and on the 28th day of June, 1865, without regard to the previous proceedings had in the matter, nor to the terms and conditions agreed upon between the heirs and his predecessor, presented a petition for the sale of the property in order " to liquidate the succession and divide it among the heirs," and pray that said sale be made for cash.

The sale took place, and the property was adjudicated for $7,400.

The executor presented a tableau of distribution, and at the same time the purchaser issued a monition for the confirmation of the sale.

Richard A. Hebrard, one of the heirs, opposed both the tableau of distribution and the monition, and the two oppositions were tried together. One of the grounds of opposition to the tableau was maintained, I may say, with the consent of the executor ; the others were abandoned; so that the only opposition now before the Court is the opposition to the monition, and consequently to the distribution of the proceeds of the sale.

The whole question turns upon the informality and illegality in granting the second order of sale.

The defects complained of result from the following facts :

1. The terms and conditions of sale were agreed upon by all parties, and confirmed by the Judge.

2. The order to sell in conformity with said terms and conditions, was, and remained in existence until quashed by the Court.

No step was ever taken to that effect, and the second executor took upon himself to ignore the previous proceedings of his predecessor in relation to the sale.

3. There was so few debts to pay that nothing authorized, and still less necessitated, a sale for cash.

The tableau shows an amount of debts of $1,700. On that sum the executor abandons his commission of $300, leaving a balance due of $1,400. The attorney's fee of $750, more than half the amount of debts, can hardly have remained entirely unpaid up to this day. It may be supposed that since the opening of the succession, which happened four years ago, he must have received a portion of his fee, thereby diminishing the amount due this day. At all events, the amount to be paid in cash, under the terms agreed upon in the first petition, would have been more than sufficient to cover the amount of debts shown by the tableau.

It was not therefore to enable the executor to pay the debts due that the property was sold for cash ; and the division among the heirs could as easily have been made with notes, according to the agreement entered into between them and the executor.

4. The terms and conditions agreed upon and adopted by the Court, could not have been changed without cause being shown to that effect, and therefore without notice to the heirs and to the attorney for absent heirs.

The second order is entirely ex parte. There is no doubt that the new Judge of the Second District Court had no knowledge of the former proceedings in this case, when he signed the second order of sale upon terms different from those ordered by his predecessor ; but the Court, in its judgment, considers that the reasons for selling being the same, there was no necessity to show cause for a change of the terms of sale.

I think it can be made to appear that the reasons were evidently different.

The debts to be paid, when the first order of sale was applied for, were much larger than at the second sale, as appears from the numerous payments made by the first executor, as per his account of administration.

The petition filed in 1862, says : '' That for the purpose of paying the debts and expenses of this succession, and meeting the heavy taxation imposed upon property generally, and finally liquidating this estate, it becomes necessary and indispensable to sell the property as described in the inventory. Wherefore, he tenders the consent of the heirs and all parties in interest, and prays that the sale be made, etc. Terms and conditions, one-third cash, balance for notes at six and twelve months, secured by mortgage, with six per cent. interest from date."

The petition filed in 1865, merely says : '' That in order to proceed forthwith to the liquidation of this succession, it is necessary that the only real property thereof, situated in Common street, and fully described in the inventory, be sold for cash; wherefore petitioner prays for an order," etc.

The liquidation of a succession, in order to divide it among the heirs, cannot be assimilated to the payment of debts. The fact is that the word '' debts" is not mentioned in the petition, and could not be mentioned as a reason to sell the property for cash. The same reasons did not therefore exist, and it so appears on the very face of the proceedings. If it was not necessary in 1862, to require the payment in cash of the whole proceeds of sale to pay all the debts then due, a fortiori, no such stringent measure was necessary to pay the small amount of debts due. We say, then, if there was no reason to change the terms of sale, could it be done ex parte, without cause alleged or shown by the executor, or without notice to the heirs, and attorney for absent heirs, to show cause why the first order should not be superceded by the second one.

It is maintained on the part of the opponent, that the first order of sale being in existence, the second one was illegal, as far, at least, as the heirs and executor are concerned. Laying aside, for a moment, the interest of the purchaser in the question, it cannot be denied that between the heirs and the executor, whose predecessor had filed of record the

terms and conditions agreed upon among the parties interested, said terms could not be changed without the necessity to do so, be shown, or their consent obtained to do it.

The duties and powers of testamentary executors are defined as follows by our Civil Code :

Article 1661 : "In default of funds sufficient to discharge the debts and legacies, the executor shall cause himself to be authorized to sell, etc. etc., to an amount sufficient to satisfy those debts and legacies."

Article 1662 : "Except in the cases provided for in the preceding article, he cannot cause the immovables to be sold, unless authorized by the will to do so."

Article 1663 : "The executor shall proceed to the sale and payment, etc. etc., in the same manner as is prescribed for curators of vacant successions."

The duties of the curators are as follows :

Article 1157 : "This petition (for sale) of the curator must be notified to the attorney for the absent heirs; shall order the sale of such part, etc. etc., as may appear to him necessary to discharge the debts," etc.

In the matter of the *Succession of Bowles*, 3 R. 36, the Supreme Court has established the following principles, which are the natural deduction of the articles above quoted, after speaking of the several notices to be given to the heirs and to the attorney for the absent heirs, the Court says :

"We think very strong reasons exist why the forced heir, at least, should be notified of an application to sell the succession in which he is interested. Article 1661 of the Code only authorizes the sale in default of funds to pay debts and legacies, and a certain order is prescribed, etc. The heir should be notified of a deficiency of funds to pay the debts, etc. Other reasons might be given why the heir should be informed of those acts of the executor, which materially affect the property, etc. It seems that the parties were aware in this case of the necessity to give notice, etc. The error appears to be fatal."

Great stress was laid (in the Court below) on the fact that the opponent has already received his almost entire share in his grandfather's succession, and that he comes with bad grace as an opponent to the tableau. The tableau shows that the other heirs have also received a portion of their share. The difference is merely in the amount received, and constitutes no legal ground to dismiss opponent's demand; and if it proves anything, it is that the opponent was the poorest of the family, and can, less than any other, submit to a useless sacrifice of his interest. I say useless sacrifice, because the sale for cash was not necessary to pay a sum not exceeding $1,400, and because the sale being made immediately after the surrender of the Confederate armies, at a moment when the state of the country was quite unsettled, when one-half, at least, of our population had not yet begun to recover from their heavy losses and fearful embar-

rassments, it was a notorious fact that property was then sold at a great
sacrifice.  Adding to the difficulties of the times the necessity of paying
the whole price cash, was certainly not the means of procuring an advan-
tageous sale of the property.

But the opponent does not merely show that his interest has been sacri-
ficed, he shows further, that it was sacrificed in violation of his legal
rights, and that he is entitled to a remedy.

If it cannot be denied that, as between the heirs and the executor, the
solemn agreement entered into could not be altered or violated without
notice to the parties thereto, the next question is, how does the illegality
shown by the proceedings affect the rights of the purchaser ?

We are met at the threshold with the dictum of the Supreme Court,
that a purchaser at a judicial sale need not look beyond the order of Court.
We do not deny the strength of the argument intrinsically, but we deny
its sweeping effect in the case of a monition.  It appears to us reasonable
and equitable to say that, when a purchaser calls upon all parties interested
to show if any informality, or any other defect exists in the proceedings
under which the property was sold, he cannot afterwards say, when the
illegality is shown, that he need not look beyond the order of Court.  He
has opened the door to the opposition, and cannot refuse to discuss its
merits.

It would seem, indeed, from the position assumed by the purchaser,
that the mere issuing of a monition cures all defects in the proceedings
conducive to the order of sale.  If he does not wish to go beyond that
order, let him be satisfied with his title, but if he, himself, goes beyond,
calls upon the heirs to show any defect whatsoever in the order under
which the sale was made, his monition becomes subject to exceptions
which, perhaps, the party interested would otherwise be precluded from
asserting as plaintiff in an action to annul the sale.  It is a case analogous
in principle to the rule : quæ temporolia sunt ad agendum perpetua sunt
ad excipiendum.  Prescription certainly extinguishes many claims after
the time fixed by law, yet those very claims may be pleaded in compensa-
tion by the defendant; and though a direct action to annul a contract be
prescribed, its nullity may be pleaded by the party against whom it is
sought to be enforced, at any time, by way of exception.  2 L. R. 386;
12 R. 198.

Now comes this question :  Do the terms and spirit of the statute of
1834 support the opponent's petition ?

The second section (R. S. 340) states that the monition must call "upon
all persons who can set up any right to the property, in consequence of
informality in the order, decree or judgment, under which the sale was
made, etc. etc., or for any other defect whatsoever, to show cause why
the sale should not be confirmed."

The 7th section says: "The judgment confirming the sale shall have the

force of res judicata against all persons who may hereafter claim the property sold in consequence of any illegality or informality in the proceedings, whether before or after judgment," etc.

In this case the opponent has responded to the call of the purchaser, and the law protecting his interest gives him the privilege of asserting his rights in consequence of any defect whatsoever, either before or after judgment, which terms could not have been inserted in the section if the parties called upon had not the right to plead in opposition to the confirmation of the sale, all informalities, illegalities or defects in the proceedings, of whatsoever nature, either before or after the order of sale. A different construction would amount to a complete abrogation of the statute. Whether the defect be a sufficient ground to annul the sale is a matter to be decided by the Court, but it must be examined and inquired into.

The alleged defect in this case is not en dehors of the proceedings; it is precisely one intended to be inquired into under the statute; it is an informality, or an illegality; it is a defect in the very order under which the property was sold; and if so considered by the Court, the monition must be dismissed and the sale annulled.

The attorney for the purchaser has quoted the cases of 1 La. 436, and 15 La. 182, in support of the position assumed by him, that the purchaser need not look beyond the order of sale. These cases date from 1830 and 1831, when there was no statute of monition, and cannot, therefore, be invoked to dismiss pleas made in conformity with the statute of 1834.

In the case of *Valderes* v. *Bird*, 10 R. 398, quoted by the defendant, the Court makes the following remarks : "It is now settled that when there is a formal decree, recognizing the necessity of selling the property for the payment of debts, and giving an opportunity to the attorney of the absent heirs to show that no such necessity existed, the purchasar is not bound to look beyond the decree."

What then is the consequence, if no such opportunity has been given ?

The Court refers to the prescriptions of Article 1157, which we have quoted ourselves, requiring notice to the attorney for the absent heirs, so that the authorities of defendant, himself, support our assertion that the terms of sale could not be changed without notifying said attorney, and giving him an opportunity to show that no such necessity existed. The decree, therefore, was informal, no such notice having been given.

The case of *Carter* v. *McManus*, 15 A. 676, relied upon by the defendants, was a direct action in nullity, and not an opposition to monition. Besides, there was no attorney for absent heirs, and nothing required a compliance with the terms of Article 1157.

We, therefore, say in conclusion :

1. That the order of sale of June 28th, 1865, for cash, was informal

and illegal, by reason of pre-existing order on the terms and conditions agreed upon.

2. That the second order of sale could not be legally issued, changing the terms and conditions, without showing that the existing debts required such an amount of cash, and without notice to the parties to the agreement entered into, including the attorney for the absent heirs, requiring them to show cause why the terms should not be changed, and why the whole amount should not be paid in cash.

3. That the defect in the mortuaria proceedings of the late Antoine Hebrard, being one of those covered by the statute of 1834, the same may be opposed to the confirmation of the monition prayed for in this case.

Opponent, therefore, prays that the judgment appealed from be reversed, the promulgation of the monition refused, the sale annulled, and the executor ordered to proceed in conformity with the terms agreed upon in the petition of January 25th, 1862, praying for an order of sale.

*J. Magne, for appellee.*—The only question presented here is, whether the probate sale made to us by the Sheriff, is valid.

Certain property was sold under an order of the Second District Court, and purchased by Samuels, the appellee; the monition published by him was opposed by the appellant, on the ground that the order of Court on which the sale was made was improperly issued. The judgment of the District Court dismissed the opposition, and the opponent appealed. The executor will show that the proceedings anterior to the order, on which the sale was made, are regular. But were it otherwise, the sale should still be declared valid as to us, the purchaser in good faith.

The Court will bear in mind that the pretended irregularities, urged by the opponent, were anterior to the order of sale; and it is well settled that "the purchaser at a sale, under the order of a Probate Court, which is a judicial sale, is not bound to look beyond the decree recognizing its necessity. He must look to the jurisdiction of the Court ; but the truth of the record, concerning matters within its jurisdiction, cannot be disputed. 2 Hennen's Digest (new edition), p. 1494, No. 5, and authorities quoted there."

In *Lalanne's Heirs* v. *Moreau*, 13 La. 436, the Court, after having noticed some points peculiar to the case, said : "But we place our decision on the broad ground, that sales directed or authorized by Courts of probates are judicial sales, to all legal intents and purposes. It was so decided by this Court in the case already alluded to (*Michel's Heirs*, 11 La. 156), and the principle is recognized in that of *Pintard* v. *Deyris*, 3 Martin N. S. 22. Article 114, p. 366, of the old Civil Code also seems to recognize it, and it is a textual provision of the Louisiana Code, included in Article 1863 :

"The necessity and wisdom of such a rule of property has long been

felt and acknowledged in the most important States of this Union, and none is better settled by the decisions of their Courts. They all maintain that a purchaser, under a decree of the Orphan's Court, is bound to look to the jurisdiction, but that the truth of the record, concerning matters within that jurisdiction, cannot be disputed. See the case of *Thompson* v. *Tolmie*, 2 Peters, 166, in which the Supreme Court of the United States said, in conclusion :

"If purchasers were responsible for the mistakes of the Court, in point of fact, after they had adjudicated upon the facts, and acted upon them, such sales would be snares for honest men."

In *Ball's Administratrix* v. *Ball et al.* 15 La. 182, the Court, after having noticed the irregularities urged in that case, and stated that they would not affect the purchasers, added :

"The holders of this property would successfully appeal to the decisions of this Court, in which it has been adjudged that purchasers at a sale made under the decree of a Court, of competent jurisdiction, are not to inquire into, or be responsible for, the proceedings which preceded the decree, and are not bound to look behind the decree itself ;" and authorities quoted there.

In *McCullough* v. *Minor, Executor*, 2 An. 466, 467, the Court said: "The purchaser in this case was not bound to look beyond the decree. The jurisdiction of the Court was undoubted, and the jurisprudence of this State has long since been settled, that a bona fide purchaser at a judicial sale is protected by the decree ;" and authorities quoted there. And this principle has been over and over again recognized. See 11 La. 149, 156. 10 Rob. 398.   16 La. 440.   3 Rob. 122.   15 An. 250.

This is also the jurisprudence admitted in the Courts of the United States.

In *Thompson* v. *Tolmie*, 2 Pet. 168, quoted as above by our Supreme Court, the Court added :

"The purchaser is not bound to look further back than the order of the Court.  He is not to see whether the Court was mistaken in the facts of debts and children ;" and the Court went on to say that such was also the jurisprudence in the State of Massachusetts, where it was held that a title under a sale by administration, by virtue of a license from the Court of Common Pleas, was good against the heirs of the intestate, although the license was granted upon a certificate of the Judge of Probates, not authorized by the circumstances of the case. The Court said: "The license was granted by a Court having jurisdiction of the subject.  If that jurisdiction was unprovidently exercised, or in a manner not warranted by the evidence in the Probate Court, yet, it is not to be corrected at the expense of the purchaser, who had the right to rely upon the order of the Court as an authority emanating from a competent jurisdiction."

And the same principle was affirmed in *Voorhees* v. *The Bank of the U.*

*S.* 10 Pet. R. 445. · 1 Wallace United States Supreme Court Reports, p. 634.

In this case the jurisdiction of the Court was unquestionable, and is not contested ; and we were not bound to look behind the decree ordering the sale. Had the appellant believed that the order of sale was improperly issued, he could have opposed it and attempted to prevent the sale ; but, after having tacitly consented to it, he cannot change his mind and question the validity of the sale, to the detriment of an innocent purchaser.

We trust, therefore, that the judgment a quo will be affirmed, and the sale homologated—all the costs to be paid by the opponent and appellant.

ILSLEY, J.   Bernard Samuels, the purchaser at a judicial sale of property belonging to the succession of Antoine Hebrard, seeks to have the sale to him of a certain lot of ground homologated by means of a monition, which is opposed by R. A. Hebrard, one of the heirs of Antoine Hebrard, who, also, opposes the tableau filed in Court by the testamentary executor, so far as it regards the distribution of the price of the lot, paid by the said purchaser into his hands.

The grounds of opposition are :

1. That the order of sale of June 28th, 1865, for cash, was informal and illegal, by reason of the pre-existing order of sale on the terms and conditions agreed upon.

2. That the second order of sale could not be legally issued, changing the terms and conditions without showing that the existing debts required such an amount of cash, and without notice to the parties to the agreement entered into, *including the attorney for the absent heirs,* requiring them to show cause why the terms should not be changed, and why the whole amount should not be paid in cash.

3. That the defects in the mortuaria proceedings of the late Antoine Hebrard, being one of those covered by the statute of 1834, the same may be opposed to the confirmation of the monition prayed for in this case.

The purchaser's main reliance is on the recognition, as applicable to this case, of the principle, that a purchaser need only look to the jurisdiction of the Court, but the truth of the record concerning matters within its jurisdiction cannot be questioned.   He relies on the following authorities :

In *Lallanne's Executor* v. *Moreau*, 13 La. 436, the Court says : "We place our decision on the broad ground, that sales directed or authorized by Courts of probates, are judicial sales to all legal intents and purposes. It was so decided by this Court in *Michel's Heirs*, 11 La. 156, and the principle is recognized in that of *Pintard* v. *Deyres*, 3 Martin N. S. 22. Art. 114, p. 366, of the old Civil Code, also seems to recognize it, and it is a textual provision of the Louisiana Code, included in Article 1863." The

necessity and wisdom of such a rule of property, has long been felt and acknowledged in the most important States of the Union, and none is better settled in the decision of their Courts. They all maintain that a purchaser under a decree of the Orphan's Court, is bound to look to the jurisdiction, but that the truth of the record concerning the matters within that jurisdiction cannot be disputed. See the case of *Thompson* v. *Tolmie*, 2 Peters 166, in which the Supreme Court said, in conclusion: "If purchasers were responsible for the mistakes of the Court, in point of fact, after they had adjudged upon the facts and acted upon them, such sales would be snares for honest men."

In *Ball's 'Admintstrator* v. *Ball et al.*, 15 La. p. 182, the Court, after observing that the purchasers would not be affected by irregularities in that case, say : "The holders of this property would successfully appeal to the decisions of the Court in which it has been adjudged," that purchasers at a sale, made under the decree of a Court of competent jurisdiction, are not to enquire into and be responsible for the proceedings which preceded the decree, and are not bound to look behind the decree itself. See the authorities quoted there.

In *McCulloch* v. *Minor*, 2 An. pp. 466, 467, the Court said : "The purchaser in this case was not bound to look beyond the decree. The jurisdiction of the Court was undoubted, *and the jurisprudence of this State has long since been settled that a bona fide purchaser, at a judicial sale, is protected by the decree.* And this principle has been repeatedly recognized. See 11 La. 149, 156; 10 Rob. 398; 16 La. 440; 3 Rob. 122, and 15 A. 250.

In the case of *Thompson* v. *Tolmie*, 2 Peters, 168, before quoted, the Court added : "*The purchaser is not bound to look further back than the order of the Court. He is not to see whether the Court was mistaken in* the facts of debts and children;" and the Court went on to say that such was also the jurisprudence in the State of Massachusetts, where it was held that a title under a sale of administration by virtue of a license from the Court of Common Pleas, was good against the heirs of the intestate, although the license was granted upon a certificate of the Judge of probates, not authorized by the circumstances of the case. The Court said : "The license was granted by a Court having jurisdiction of the subject. If that jurisdiction was improvidently exercised, or in a manner not warranted by the evidence in the Probate Court, yet it is not to be corrected at the expense of the purchaser, who had a right to rely upon the order of the Court, as an authority emanating from a competent jurisdiction, and the same principle was affirmed in *Voorhies* v. *The Bank of the United States*, 10 Peters, p. 445; 1 Wallace United States Supreme Court Reports, p. 634.

This is certainly the general rule, and the counsel for the opponent says : "We do not deny the strength of the argument intrinsically, but we deny its sweeping effect in the case of a monition; and it is contended that the Act of 1834 justifies the opponent in resisting the homologation

of the sale for any defect whatever, either *before* or *after* the judgment."

He says that the cases cited by the purchaser, to screen him from any defects previous to the rendition of the decree or order of sale, date from 1830 and 1831, when there was no statute of monition, and that the principle therein recognized cannot be invoked to dismiss pleas made in conformity with the statute of 1834.

The doctrine contended for by the purchaser is one now of fixed jurisprudence daily and uniformly put into practical operation. 2 An. 468, 14 An. 154. How far it may be applicable in monition suits is not well settled ; but, it would seem to be the fixed determination of the Courts, as we gather from our own jurisprudence, and that of other States of the Union, as well as that of the Supreme Court of the United States, to protect the innocent purchaser of property at judicial sales ; and the case must be a strong one against the purchaser, in whatever form the question is presented, to disturb him for defects in the proceedings, previous to the rendition of the decree, under which the sale to him is made.

Is there anything in the mortuaria to estop the opponent from contesting one very important fact—that a sale of the lot of ground was of indispensable necessity to pay the debts and charges of the succession ? If there be, and it had a tendency to induce third persons to believe in the existence of this fact, can he who thus vouched for the truth of it be heard to gainsay it ? Most assuredly not. The opponent subscribes, in the most unqualified manner, to the declaration of the executor, "that for the purpose of paying debts and expenses of this succession, and meeting the heavy taxation upon property, generally and finally liquidating the estate, it becomes necessary and indispensable to sell the property as described in the inventory," in which is included this lot of ground.

This admission of the indispensable necessity for a sale of *this property*, is made by all the heirs, and the attorney of the absent heirs, and if this was an essential prerequisite to the order for a sale, it could not have been more formally observed ; but were there not, in reality, debts still due by the succession ? The first executor received $4,781 05, and distributed among the *heirs* $4,643 86, having extinguished of the debts (amounting to some $1,795 39) only $137 19, and leaving due thereon $1,658 20, to be paid out of the proceeds of the lot. The terms of sale were changed by the order for a sale of the 28th June, from credit instalments to cash ; and it is contended that the want of notice of this change to the heirs and attorney of absent heirs, rendered null and void the order of sale, and the sale made under it. The testamentary executor is authorized by law to cause to be sold the property of the succession, to pay the *debts* and *legacies* (1661 C. C.); and, in proceeding to the sale of such property, it should be done in the same manner as is prescribed for the curators of vacant successions. 1663 C. C. Notice must be given to

*the attorneg for absent heirs* (1157 C. C.); and the Judge, after having heard *him,* shall order the sale of all or such part of the real estate, which belongs to the succession, as may appear to him necessary, in order to discharge the debts. (See Articles 1155, 1156, 1157, 1661 and 1663 of the Civil Code.)

So far as regards the requisitions of these articles in relation to the notification of the executor's petition for a sale to the attorney of absent heirs, it has been complied with, and he and the heirs present have admitted, judicially, the necessity for such a sale. This was the sole object of the law in making the attorney for absent heirs a party to an application for a sale, in order to ascertain, contradictorily with *him,* if such a sale was necessary.

It was so, in effect, declared in *Valderas* v. *Bird,* 10 Rob. 398. The Court therein said :

. "It is now settled that when there is a formal decree, recognizing the necessity of selling the property for the payment of debts, and giving an opportunity to the attorney of absent heirs to show that no such necessity existed, the purchaser is not bound to look beyond the decree."

The last order of 28th June, 1865, for a sale, was merely supplementary to the first order, and produced no change in it, except as to the terms, substituting for credit installments of *six* and *twelve* months, *with interest,* a cash price—a modification within the competence of the Court, on the application of the executor, advised as it was by previous proceedings, that a sale was necessary, and aware that the delay for the credit installments, originally specified in the first order, had, long previous to the date of the second order, passed by, and taking into consideration that, in the peculiar state of things then existing, that the change was an advantageous one. Orders for sales in succession matters are not final judgments, and, as such, unalterable ; but may be, and frequently are, modified by the Judge, in the exercise of a sound legal discretion, and for sufficient reasons. See 540 C. P. *Elders* v. *Rogers,* 11 An. 606. *Thompson* v. *Mylner,* 9 An. 211. *Slark* v. *Burk,* 9 An. 345 ; which are similar in principle.

The case of the *Succession of Bowles,* referred to by the appellee, differs materially from this one. The authorities cited below are, we think, more apposite to the case at bar : Articles 1661, 1663, 1156, 1157, 1042, 1051, and 1055 C. C. *Succession of McLean,* 12 An. 223. *Succession of Gurney,* 14 An. 622; and *Carter* v. *McManus,* 15 An. 677.

No objection on account of irregularity or illegality, in the order of sale was made at or previous to the sale ; and for the reasons hereinbefore given by us, and those upon which the District Judge dismissed the oppositions of Richard A. Hebrard, the judgment, with an amendment to it, must be affirmed. By the act of the Legislature, entitled "An act for the further assurance of titles to purchasers at judicial sales," approved 10th

March, 1834, section 5th, it is made the duty of the Judge, in case no cause is shown against the prayer of the monition, to homologate and confirm the judicial sale, provided the applicant has, to the satisfaction of the Judge, complied with the requisitions of the law in relation to advertisements, description of property, etc., which he has done.

It is therefore ordered, adjudged and decreed, that the judgment of the District Court, which only dismisses the opposition of R. A. Hebrard to the homologation of the judicial sale of the lot of ground belonging to the succession of Antoine Hebrard and adjudicated to Bernard Samuels, on the 31st July, 1865, be amended, and that the said judicial sale be, and the same is hereby homologated and confirmed ; and that so amended, that the said judgment be affirmed, at the costs of opponent and appellant.