h GASKINS, J.
Following a foreclosure by executory process, summary proceedings were conducted to rank the claims against the funds in the registry of the court. Intervenor, Regions Bank of Louisiana, appeals from a trial court judgment awarding all of the proceeds from the sheriffs sale to the plaintiff, Ouachita Valley Federal Credit Union (“the credit union”). We affirm.
FACTS
In June 1993, Charles Harold Steed and his wife Judy Houston Steed executed a collateral mortgage package in favor of the credit union. The package included a collateral note, mortgage and pledge agreement; the mortgage encumbered real estate located in Ouachita Parish. Thereafter, the Steeds became indebted to the credit union for three individual debts which were secured by the real estate, an automobile and a signature loan, which were cross-collateralized.
On August 20,1997, the credit union filed a petition for executory process against the defendants, asserting that the couple had executed three promissory notes in favor of the credit union and were indebted in the amounts of
• $39,293.48 (with interest of 9.90% per annum on $37,811.33 from 8/19/97 until paid, together with 25% attorney fees);
• $6,874.65 (with interest of 10.90% per annum on $6,584.34 from 8/19/97 until paid, together with 25% attorney fees); and
• $2,204.80 (with interest of 15% per annum on $2,077.59 from 8/19/97 until paid, together with 25% attorney fees).
These debts were secured, giving the credit union the status of superior mortgage holder in all its claims. The credit union prayed for a writ of seizure and sale ordering the sheriff to sell the property without appraisement “to pay and satisfy petitioner’s claim(s) as set forth in paragraph one above, and for all costs hereof; petitioner to be paid from the *28 proceeds by preference and priority over all others whomsoever.” Attached to the petition were the collateral mortgage note for k$75,000; the collateral mortgage on the real estate in Ouachita Parish; the related collateral pledge agreement; and the promissory notes. An order signed by the trial court on August 20, 1997, issued executory process “as prayed for and in accordance with law.”
On August 21, 1997, a writ of seizure and sale was issued by the clerk of court for Ouachita Parish. It listed only the debts in the amounts of $6,874.65 and $2,204.80. Due to a clerical error, the debt of $39,293.48 was not included. Service of this writ was made on the defendants on August 27, 1997. Thereafter, the property was seized and advertised.
Prior to the sale of the property, a mortgage certificate was executed listing the previously mentioned $75,000, collateral mortgage as a validly recorded first mortgage. As inferior liens and mortgages, it also showed that Regions Bank of Louisiana held a judicial mortgage of $2,416.72 filed August 27, 1997; a multiple indebtedness mortgage of $16,063.68 filed September 16, 1997; and an amended judicial mortgage of $11,769.38, $4,325.56, and $2,416.72 filed October 1, 1997.[1]
On October 15, 1997, the property was sold at a sheriffs sale to Regions Bank for $53,-000. After payment of costs, the remaining $50,924.23 was deposited in the registry of the court upon the petition of the Ouachita Parish sheriff.
The credit union filed a motion to withdraw funds and/or rule to rank the claims. Named as defendants in the motion/rule were Regions Bank and the clerk of court for Ouachita Parish. Pursuant to its petition for executory process, the credit union claimed entitlement to the entire sum in the registry of the court.
^Regions Bank filed a petition of intervention under La.C.C.P. art. 1092. It admitted that the credit union was entitled to the sums of $6,874.65 and $2,204.80 listed in the writ of seizure. However, since the writ of seizure did not include the debt of $39,293.48, Regions Bank claimed entitlement to the remaining funds in the registry instead of the credit union. It also filed a peremptory exception of nonjoinder of party, contending that the defendants were necessary parties because there was a possibility that they might be entitled to any remaining funds after the satisfaction of creditors. Finally, Regions Bank filed an opposition to the motion to withdraw funds.
A hearing was held on the motion to withdraw/rule to rank in December 1997. The parties stipulated that each side knew nothing of the defective writ prior to the sale. They also stipulated that immediately prior to the sale counsel for the credit union told a representative of Regions Bank what the credit union’s reduced required payoff would be ($50,000 plus $2,000 in estimated sheriffs costs and commissions) and that its bidding would have to go to at least $52,000. The credit union also introduced copies of Mr. Steed’s Chapter 13 bankruptcy proceedings in which both the credit union and Regions Bank were listed as creditors. Although the bankruptcy was ultimately dismissed, the documents showed that in May 1997 the Steeds owed the credit union secured claims of $36,758 and $6,213, as well as an unsecured claim of $1,975, the same debts upon which the credit union sued in the instant case.
Regions Bank’s exception of nonjoinder was overruled; the trial court found that since the defendants were sued in executory process without appraisement their appearance was unnecessary. Regions Bank’s intervention was dismissed and its opposition rejected. The trial court found that the amount due to the seizing ^creditor was the amount specified in the petition for executory process and declined to impute the clerk’s defective writ to the credit union. It directed the clerk of court to pay the entire sum in the registry of the court to the credit union.
Regions Bank appealed.
*29 NONJOINDER OF PARTIES
Regions Bank claims that the trial court erred in failing to sustain its peremptory exception of nonjoinder of parties. It asserts that the Steeds were necessary parties to the motion to withdraw funds from the registry of the court because La.C.C.P. art. 2373 provides that any excess funds remaining from the sale after the payment of all liens and mortgages be paid to the debtors.
The instant suit involves a judicial sale without appraisal. According to the terms of La. R.S. 13:4106, such a sale discharges the personal obligation of the defendants/debtors even if there are insufficient funds to satisfy the debt for which the property is sold. In overruling the exception, the trial court stated that since the Steeds were sued in execu-tory process and the sale was without appraisal, it saw no necessity for the Steeds’ appearance on the motion to withdraw funds.
An objection of nonjoinder of a party under La. C.C.P. art. 641 and 642 may be raised by peremptory exception. See La. C.C.P. art. 927. The provisions of La. C.C.P. art. 641 outlines certain criteria for determining whether joinder of a party is required for just adjudication of a matter. It states:
A person shall be joined as a party in the action when either:
(1) In his absence complete relief cannot be accorded among those already parties.
(2) He claims an interest relating to the subject matter of the action and is so situated that the adjudication of the action in his absence may either:
(a) As a practical matter, impair or impede his ability to protect that interest.
k(b) Leave any of the persons already parties subject to a substantial risk of incurring multiple or inconsistent obligations.
If a person described in La. C.C.P. art. 641 cannot be made a party, the court shall determine whether the action should proceed among the parties before it or should be dismissed. La. C.C.P. art 642.
La. C.C.P. art. 2373 states:
After deducting the costs, the sheriff shall first pay the amount due the seizing creditor, then the inferior security interests, mortgages, liens, and privileges on the property sold, and shall pay to the debtor whatever surplus may remain.
Examination of the record in the instant ease shows that — even excluding the contested amount of $39,293.48 — the amounts owed to creditors exceed the proceeds of the sale.[2] There is no possibility of a surplus to which the defendants/debtors would be entitled. Thus, it cannot be said that complete relief is unattainable in their absence or that their absence will impede their rights. La. C.C.P. art. 641. Clearly, the relief requested here can be accorded among those already parties to this motion to withdraw funds.
AMOUNT DUE SEIZING CREDITOR
Regions Bank also contends that the trial court erred in not imputing the clerk of court’s clerical error in the writ to the credit union. It maintains that, after payment to the credit union of the two debts listed in the writ, it should have received the remaining sales proceeds.
Like the previously quoted La. C.C.P. art. 2373, the provisions of La. C.C.P. art. 2377 outline the appropriate procedures to be followed after a judicial sale such as the one in the present case:
IsThe sheriff shall pay the inferior security interests, mortgages, liens, and privileges, after payment of the costs and the amount due the seizing creditor. When the sum remaining after payment of the costs and the amount due the seizing creditor is insufficient to pay such inferior claims in full, the sheriff may deposit the remainder with the court and proceed by contradictory motion against the inferior creditors to have their claims referred to the proceeds of the sale. (Emphasis added.)
According to the argument of Regions Bank, “the amount due the seizing creditor” under both of these articles would be the *30 amount stated in the writ even if that amount is incorrect as the result of an error by the clerk of court. To the contrary, the credit union asserts that the clerk’s error was inconsequential because Regions Bank was fully aware that the actual payoff was about $50,000, not $9,000 as suggested by the writ.
The basic facts of this case do not require protracted legal analysis. The mortgage certificate read prior to the sale established that the only debt outranking those owed to Regions Bank was the credit union’s $75,000 collateral mortgage; by its nature, such a mortgage may cover indebtedness up to the specified amount. In the case sub judice, the seizing creditor was the creditor having the superior liens on the property, and it is the superiority of the claim that controls the distribution of the sales proceeds. The stipulations entered into by the parties specify that neither party was aware of the error in the writ, which listed only about $9,000 in indebtedness. However, more importantly, the parties also stipulated that moments before the sale, the representative of Regions Bank was informed by the credit union’s counsel of the required payoff and that the amount to be bid had to be at least $52,000. Such a sum was commensurate with the true amount actually owed to the credit union by the defendants/debtors. When the sale occurred shortly thereafter, Regions Bank bid $53,000 to purchase the property. Consequently, it cannot be seriously argued that Regions Bank was not as aware of the “amount bowed the seizing creditor” as the credit union. Nor may it be said that Regions Bank was misled by the error in the writ. These two financial institutions were in possession of the same pertinent information concerning the sale.
Regions Bank cites Massie v. Brady, 41 La.Ann. 553, 6 So. 536 (1889), for the proposition that:
It is elementary that a bona fide purchaser at a judicial sale is protected by the decree ordering the sale, and he is not compelled to go behind it and investigate the facts upon which the decree was rendered.
We find this rule inapplicable to the circumstances presented in the instant case. It was designed “to protect the innocent purchaser of property at judicial sales.” See Succession of Hebrard, 18 La. Ann. 485 (1866). We also note that the Massie case — unlike the present ease — involved an attack upon the validity of the executory proceedings and sale; the mortgage note upon which the order of seizure and sale was granted had allegedly been extinguished by payment. The good faith of the Massie purchaser was not disputed.
In Tharp v. Edmiston, 179 La. 720, 155 So. 2 (1934), a defect in a notice of seizure incorrectly stated the amount of the debt for which the property was seized. (The notice gave the amount as $2,000 instead of the correct amount of $9,000 less a credit of $400.) There the court noted that the holders of the “junior mortgages” had “no right to complain of a defect in the notice of seizure, addressed to the defendant, unless they charged fraud or collusion between the credit union and the defendant in the executory proceeding_” The record before us contains no such allegations.
Like the trial court, we see no basis upon which to penalize a seizing creditor with a valid claim — such as the credit union — for the clerical mistake of the clerk of court. We find no error in the trial court’s ruling that the credit union was ^entitled to all of the sales proceeds in the registry of the court. Regions Bank was as aware as the credit union of the amount of the necessary payoff prior to the sale and is bound by that knowledge.
CONCLUSION
The judgment of the trial court is affirmed. Costs are assessed to the appellant/interve-nor, Regions Bank.
AFFIRMED.

. Apparently, the mortgage certificate listed the $2,416.72 debt again in the amended judicial mortgage in favor of Regions Bank.

. In both its petition of intervention in the trial court and its appellate court brief, Regions Bank gives the balances due to it under its judicial mortgages and its conventional mortgage as, respectively, $25,635 and $19,300.